**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Criminal No. 16-0090 (ES)** |
| **v.** | **OPINION** |
| **BIENVENIDO VIZCAINO** | |

**McNulty, District Judge**

Before the Court is defendant Bienvenido Vizcaino's motion (DE 28) for a reduction of sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The Government opposes the motion. (DE 31). This matter has been reassigned from Judge Salas to me for purposes of this motion. Having considered the parties' submissions, I decide this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer,* 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the motion is DENIED.

I.     **BACKGROUND**[1]

On February 29, 2016, Mr. Vizcaino pled guilty to a two-count information charging him with possession with intent to distribute heroin (Count One) and cocaine (Count Two). (DE 17–19). The amounts were significant, and the surrounding circumstances suggested an ongoing

---

[1]  Citations to documents in the record will be abbreviated as follows:

Mot. = Mr. Vizcaino's motion, DE 28

Opp. Br. = Government's brief in opposition to the motion, DE 31

Sentencing Tr. = Transcript of Mr. Vizcaino's sentencing

trafficking operation. The Defendant, moreover, had a significant criminal record. On June 21, 2016, Mr. Vizcaino was sentenced by the Honorable Esther Salas to concurrent terms of imprisonment of 78 months on each of counts one and two, to be followed by four years of supervised release. (DE 21).

Mr. Vizcaino is serving out his sentence at Moshannon Valley Correctional Institution ("MVCI") in Philpsburg, Pennsylvania.[2] (Mot. at 2). His anticipated release date is March 10, 2022. (*Id.* at 1; Opp. Br. at 2).

Mr. Vizcaino now moves this Court for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) based on his medical conditions and the COVID-19 pandemic.[3] The Government opposes the Motion.

## II.    LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it

---

[2]     MVCI is a private facility under contract with the federal government. According to press accounts and the parent company's advice to its investors, that contract is expiring as of March 31, 2021, and MVCI will be closing as a federal institution. *See* The Courier Express, "GEO's Moshannon Valley Correctional Facility loses federal contract" (Jan. 21, 2021) http://www.thecourierexpress.com/news/geos-moshannon-valley-correctional-facility-loses-federal-contract/article_c7896d80-0dc6-5cb4-a1b0-9bce70879317.html; "Edited Transcript of GEO.N earnings conference call or presentation 16-Feb-21 4:00pm GMT," https://finance.yahoo.com/news/edited-transcript-geo-n-earnings-160000601.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS88&guce_referrer_sig=AQAAAG3Rl8nJXd8g-M2Xr57N6w0nCM2RuW-M9srYM5ICY4xzEEkB38fKFT6QR3KSmgXSlaTcZ9WJTSPvyUbOr2IXWqehA9daqXVT9CH6IAPdovKvqUiGS9N5pg_8hPJwEAiIbUzblgs_FdMqwYNqj9q70mKgk2cLq6ecKBP3d51AdegD. The parties have not informed the Court that Mr. Vizcaino has been scheduled to be moved to a different facility, so I deal with the motion as-is.

[3]     Mr. Vizcaino initially filed a *pro se* motion for release. (DE 23). Pursuant to the District of New Jersey's Standing Order 2020-08, the Court informed the Office of the Federal Public Defender of the pending *pro se* motion. Following counsel's appearance, the Court terminated the *pro se* motion and set a briefing schedule for a renewed motion. (DE 26). I have, however, reviewed the *pro se* submission as well.

only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98

(3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). As relevant here, § 3582(c)(1)

provides as follows:

> (A) the court, upon motion of the Director of the
> Bureau of Prisons, or upon motion of the defendant
> after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau
> of Prisons to bring a motion on the defendant's
> behalf or the lapse of 30 days from the receipt of such
> a request by the warden of the defendant's
> facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or
> supervised release with or without conditions that
> does not exceed the unserved portion of the original
> term of imprisonment), after considering the factors
> set forth in section 3553(a) to the extent that they are
> applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant
> > such a reduction;
> >
> > [. . .]
> >
> > and that such a reduction is consistent with
> > applicable policy statements issued by the
> > Sentencing Commission . . . .

*See also United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020).

The United States Sentencing Commission has promulgated a policy

statement that, in relevant part, allows a court to grant compassionate release

or a sentence reduction if: (i) extraordinary and compelling reasons warrant a

reduction in a defendant's sentence; (ii) the defendant is not a danger to the

safety of others or to the community; and (iii) release from custody complies

with certain of the section 3553(a) factors, to the extent applicable. U.S.

SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N

2018).

### III.   ANALYSIS

#### A.      Exhaustion

Before a court may consider a First Step Act motion for reduction in sentence, a defendant must meet § 3582(c)(1)(A)'s exhaustion requirement, which requires either that that the defendant has exhausted all administrative remedies, or that, since the submission of a request to the warden, 30 days have passed without a decision being rendered. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Government does not dispute that Mr. Vizcaino satisfied this exhaustion requirement by submitting a request for compassionate release to the warden at his facility more than thirty days prior to his filing this motion. (*See* Mot. at 3; Opp. Br. at 6–7). I therefore turn to the merits.

#### B.      Extraordinary and Compelling Reasons for Reduction

Congress directed the Sentencing Commission to define the "extraordinary and compelling reasons" standard. *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement in which an application note lists three specific circumstances that qualify as extraordinary and compelling. Generally speaking, the enumerated circumstances include: (i) a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; (ii) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental

4

health because of the aging process, and has served at least 10 years or 75

percent of his or her term of imprisonment, whichever is less; or (iii) certain

family circumstances exist where the defendant would be the only available

caregiver for his or her minor child, spouse, or registered partner. U.S.S.G. §

1B1.13, Application Note 1(A)–(C). In addition, the Sentencing Commission

included a catchall provision, which provides that "other reasons" may be

sufficient if "[a]s determined by the Director of the [BOP], there exists in the

defendant's case an extraordinary and compelling reason other than, or in

combination with, the reasons described in [the enumerated] subdivisions." *Id.*,

Application Note 1(D).

Because this policy statement has not been updated since the First Step

Act was passed, it only addresses motions made by the BOP, not by

defendants. As a result, courts have been vexed by the question of the

significance of the Sentencing Commission's failure, as of yet, to amend the

Guidelines to conform to the First Step Act.[4] I look to the Guidelines,

application notes, and commentary for guidance. In accordance with the trend

of the case law, I will assume that they do not limit what a court, within its

discretion, may find "extraordinary and compelling."[5]

---

[4]     The Commission has a number of long-standing vacancies, and lacks a
quorum. *See Organization,* UNITED STATES SENTENCING COMMISSION,
https://www.ussc.gov/about/who-we-are/organization (last visited Feb. 19, 2021).

[5]     There appears to be a growing consensus that section 1B1.13 does not limit the
discretion of a court considering compassionate release under the First Step Act. *See
United States v. Brooker*, 976 F.3d 228 (2nd Cir. 2020); *United States v. McCoy*, 981
F.3d 271, 281 (4th Cir. 2020) ("When a defendant exercises his new right to move for
compassionate release on his own behalf, in other words, § 1B1.13 does not apply.");
*United States  v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that "the passage

In the context of COVID-19-based motions for compassionate release, two components have emerged as being logically relevant to the issue of whether extraordinary and compelling reasons are present: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-0101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

Mr. Vizcaino argues that he "runs a high risk of serious illness or death if he contracts COVID-19 because of his underlying asthma and other health issues," including hyperlipidemia, prediabetes, and high blood pressure. (Mot. at 6 & 11). The Government disputes the existence and severity of some of Mr. Vizcaino's stated medical conditions; even considering those conditions, however, it argues that Mr. Vizcaino has not established extraordinary and compelling reasons for his release. (Opp. Br. at 8–9).

By now the severity of the COVID-19 pandemic is widely recognized, and I dispense with a lengthy introduction to the virus and its effects. Briefly, COVID-19 is a dangerous illness which has created an unprecedented public health crisis; the virus can be transmitted from person to person, even by persons who display no symptoms; and to thwart the spread of the virus,

---

of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners.").

certain measures—such as social distancing, wearing cloth face coverings around others, and frequent hand washing—must be taken.[6] Although there are modes of treatment and most of the infected recover, many others do not. And while vaccine rollouts have begun, due to limited doses and other restrictions, it will be some time before the entire population has the option to be vaccinated.

One key issue here is whether the movant's underlying medical condition renders him particularly susceptible to serious harm if he were to contract a COVID-19 infection. On that score, courts around the country have relied on certain classifications of medical conditions published by the Centers for Disease Control (CDC). *See e.g.*, *United States v. Dent*, No. 18-20483, 2020 WL 4783921, at *3 (E.D. Mich. Aug. 17, 2020) (relying on the CDC's classifications to conclude that defendant's cited medical condition was insufficient to meet the extraordinary and compelling standard); *United States v. Henries*, No. 00-0788, 2020 WL 4727090, at *2 (D.N.J. Aug. 14, 2020) (same); *United States v. Henry*, No. 04-0004, 2020 WL 4748537, at *5 (D. Md. Aug. 17, 2020) ("This Court's analysis of an individual's virus-related concerns is heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case of COVID-19.").

The CDC lists medical conditions which entail that individuals who have

---

6        *See How to Protect Yourself & Others*, CENTERS FOR DISEASE CONTROL AND PREVENTION ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html. (last visited Feb. 19, 2021).

them "*are* at increased risk of severe illness" from COVID-19; it lists others for which individuals "*might be*" at increased risk of severe illness from COVID-19.[7] Those lists guide my analysis, although they do not, standing alone, have the force of law.

The Government does not dispute that the medical records show prediabetes and hyperlipidemia. The Government does dispute the severity of Mr. Vizcaino's asthma, describing it as "a mild form of asthma." (Opp. Br. at 1). The Government also disputes that Mr. Vizcaino suffers from high blood pressure, noting that MVCI Health Services "reported that his current records do not reflect the defendant suffering from high blood pressure, and the blood pressure reading taken at the Defendant's January 28, 2021 medical exam was within a normal range for the Defendant's age." (Opp. Br. at 2–3).

I have reviewed the medical records attached to Mr. Vizcaino's *pro se* motion. (DE 23).[8] Those records demonstrate that Mr. Vizcaino is being or has been treated for hyperlipidemia, asthma, and prediabetes. (*See* DE 23 at 19, 27 & 30 (ECF Pagination)). It is not immediately clear from those records that Mr. Vizcaino suffers, as he claims, from diagnosed hypertension, or high blood pressure. One blood pressure reading from July 2020 was 122/80, which

---

[7]     *See People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. (last visited Feb. 19, 2021).

[8]     On January 25, 2021, defense counsel indicated that he was attempting to obtain additional medical records to substantiate Mr. Vizcaino's claims that he has health issues. (DE 30). Those records have not yet been submitted. For purposes of this motion, however, I have assumed that Mr. Vizcaino in fact suffers from the medical conditions he claims.

lands in the "elevated" range, and another reading from that same month was 130/87, which lands in the "hypertensive stage one" range.[9] (*See id.* at 28 & 29). I will assume, however, that Mr. Vizcaino suffers from moderate-to-severe asthma and diagnosed hypertension, or high blood pressure, in addition to his prediabetes and hyperlipidemia.

Mr. Vizcaino's asthma and hypertension would not place him on the CDC's "are at risk," list but they do place him on the CDC's list of persons who "might be" at risk of severe illness from the COVID-19 virus. Mr. Vizcaino's other cited medical conditions—hyperlipidemia and prediabetes—do not appear on either list. Considering his conditions in combination and per the CDC's guidelines, then, Mr. Vizcaino, is a person who might be at risk for a more severe reaction if infected with COVID-19.

That fact alone is not enough to meet the extraordinary and compelling reasons inquiry. *See e.g.*, *United States v. Gideon*, No. 13-0429, 2020 WL 7351212, at *2 (D.N.J. Dec. 15, 2020) (denying compassionate release to an inmate with hypertension because he was not in the "high-risk category"); *United States v. Scalea*, No. 18- 00620, 2021 WL 395874, at *2 (D.N.J. Feb. 4, 2021) (denying compassionate release to an inmate with asthma and hypertension because he did not "fall within the class of people most vulnerable to the virus"); *United States v. Tull*, No. 15-622, 2020 WL 6381250,

---

9        *See High Blood Pressure*, CDC, https://www.cdc.gov/bloodpressure/facts.htm. (last reviewed September 8, 2020) (last visited Feb. 19, 2021).

at *3 (D.N.J. Oct. 30, 2020) (collecting cases for the proposition that "[m]ultiple decisions in this District have denied compassionate release to inmates suffering from asthma, hypertension, and/or other health issues, despite the risk of COVID-19.").

My conclusion that Mr. Vizcaino's medical situation is not extraordinary and compelling is further reinforced by my review of conditions at MVCI.

MVCI is a contracted correctional institute, operated by a private corporation, which houses approximately 1,344 federal offenders.[10] Mr. Vizcaino explains that he sleeps in a bunk in a large room holding 78 other inmates that have access to only three bathrooms and argues that this environment "heightens the potential for COVID-19 to spread once introduced." (Mot. at 2–3). Defendant otherwise argues that the BOP's COVID-19 action plan, which the Government relies on in its opposition, is flawed and has not adequately protected inmates at various facilities across the country. (*Id.* at 10-11).

I reject Defendant's argument to the extent it is based on generalities about infection rates in prison facilities and the possibility that COVID-19 may spread to a particular prison. Such reasons alone "cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *See Raia*, 954

---

[10]     *See CI Moshannon Valley*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/ci/mvc/ (last visited Feb. 19, 2021).

10

F.3d at 597.

More pertinent are statistics regarding infection rates at MVCI. Current statistics at MVCI are as follows:

| Facility | Inmates Positive | Inmate Deaths | Inmates Recovered |
|---|---|---|---|
| Moshannon Valley CI | 0 | 4 | 192 |

*See COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 19, 2021) (press hyperlink to "privately-managed prisons").

Although there are no current positive cases, a history of 192 inmates recovered and 4 deaths suggests that there was, historically, an outbreak—*i.e.,* that the COVID-19 virus "infiltrated the [MVCI] facility." *United States v. MacCallum,* No. 15-0204, 2021 WL 28016, at *4 (W.D.N.Y. Jan. 5, 2021). The same figures also suggest, however, that the facility has effectively curtailed any further spread of the virus. In short, the trend during the pendency of this motion has been sharply downward, to zero. *See United States v. Flores,* No. 10-0124, 2020 WL 7334272, at *4 (N.D. Ind. Dec. 14, 2020) (citing 28 active cases at MVCI as of December 10, 2020); (Opp. Br. at 6 (reporting 7 positive inmates at MVCI as of January 31, 2021)).

The overall picture, then, is this: Defendant has certain medical conditions, but these only "might" put him at increased risk of severe illness if he were to get sick with COVID-19. There are currently no reported COVID-19 cases at MVCI, which in any event is closing at the end of March. I do not find

11

that extraordinary and compelling circumstances exist which would warrant a sentence reduction. *See Flores*, 2020 WL 7334272, at *4 ("While I am certainly sympathetic with Flores's situation and his concern about potentially becoming infected with COVID-19 from someone else at [MVCI], I do not think this is an extraordinary and compelling reason to justify release."). The lack of such compelling circumstances, in itself, suffices to require that the motion be denied. *See United States v. Munoz*, No. 15-00324, 2020 WL 7074351, at *3 (D.N.J. Dec. 3, 2020) (denying motion for compassionate release based on the defendant's failure to demonstrate an extraordinary and compelling reason for a sentence reduction).[11]

Because the above considerations are sufficient to require denial of Vizcaino's motion, I discuss the remaining factors only briefly. They, too, weigh against a sentence reduction.

## C.    Section 3553(a) Factors and Dangerousness

Before granting a motion for compassionate release, courts will consider certain sentencing factors under 18 U.S.C. § 3553(a), as well as dangerousness under 18 U.S.C. § 3142(g).

As for the section 3553(a) factors, courts are directed to impose a sentence that is sufficient, but not greater than necessary, to further the purposes of sentencing. In doing so, the court is to be guided by the need for

---

[11]    Mr. Vizcaino seeks release, not to the community, but to the custody of ICE, which presumably has a detainer lodged. (Mot. at 6). Release to ICE custody might or might not affect Mr. Vizcaino's risk of exposure to COVID-19, although presumably it would hasten the day of his eventual deportation and release.

the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with adequate treatment, training, education, and care. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(D). Additionally, section 3553(a) directs the Court to consider, *inter alia*, the nature and circumstances of the offense and the defendant's history and characteristics. *Id.* § 3553(a)(1).

On June 21, 2016, the Honorable Esther Salas sentenced Mr. Vizcaino to a term of imprisonment of 78 months to be followed by a four-year term of supervised release. (DE 21). Prior to doing so, Judge Salas determined that Mr. Vizcaino's guidelines sentencing range was 78 to 97 months of imprisonment and four to five years of supervised release. (Sentencing Tr. at 3:22–4:1). Judge Salas's decision to sentence within the guidelines range was guided by (i) the seriousness of the offense and the Defendant's role in the offense; (ii) the need to promote respect for the law; (iii) the need for general and specific deterrence; (iv) certain history and characteristics of the Defendant; and (v) the need to avoid unwanted sentencing disparities. (*Id.* at 23:8–32:10). Judge Salas sentenced at the low end of the guidelines range, however, because as a non-citizen, Mr. Vizcaino was ineligible for certain benefits (such as early release to a halfway house and certain programs like RDAP) that he otherwise would have been entitled to. (*Id.* at 32:11–33:7). Letters of support for the Defendant written by various family members also contributed to a sentence at the low end of the range. (*Id.* at 33:8–36:13).

Although Mr. Vizcaino has now served much of his 78-month sentence,[12] he does not present any persuasive arguments to mitigate or change Judge Salas's prior analysis of the section 3553(a) factors. I am thus guided by the findings made by Judge Salas at sentencing, which still hold true today and justify Mr. Vizcaino serving out his sentence as imposed.[13]

Having weighed all of the relevant factors, I will deny Mr. Vizcaino's motion for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A).

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED.  An appropriate Order accompanies this Opinion.

Dated: February 22, 2021

/s/ Kevin McNulty

Kevin McNulty, U.S.D.J.

---

[12]    The Government reports that his projected release date, assuming good time credit is March 10, 2022.

[13]    The dangerousness considerations pursuant to § 3142(g) overlap with many of the factors discussed by Judge Salas at sentencing. The dangerousness factors may be of less significance, however, in that Mr. Vizcaino, at least at the outset, seeks only release to ICE custody, not to the community. I canvass them only briefly.

In connection with pretrial detention, the dangerousness inquiry involves (i) the nature and circumstances of the offense; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. Factor (ii) is mooted by Defendant's conviction; factors (i) and (iii) largely duplicate the § 3553(a) considerations discussed above. Factor (iv), the nature of the danger, is not favorable to Defendant considering the seriousness of his offense and his criminal history. *See United States v. Pass*, No. 10-0739, 2020 WL 2332001, at *3 (E.D. Pa. May 11, 2020).